IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARQUEN SMART,**<br>　　　　　　Plaintiff, | **CIVIL ACTION** |
| v. | |
| **ALLSTATE INSURANCE COMPANY,**<br>　　　　　　Defendant. | **NO.  21-3910** |

## MEMORANDUM OPINION

Plaintiff Marquen Smart brought this action against Allstate Insurance Company ("Allstate"), alleging that Allstate improperly refused to provide coverage for injuries he sustained in a hit-and-run accident involving his father's car.  Allstate moves, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment of Plaintiff's breach of contract claim.  For the reasons that follow, the Motion will be denied.

**I.　BACKGROUND**

Smart alleges that in August 2019, while he was a passenger in a Cadillac CTS owned by his father, an unknown vehicle sideswiped the car and sped away.  As a result of the collision, Smart alleges that he has suffered painful and lingering injuries to his back, neck, and leg.  Smart's father held an Allstate automobile insurance policy that includes "uninsured motorists insurance" covering "damages to an insured person for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured auto."  Under the policy, insured persons include Smart's father and "any resident relative."  An "uninsured auto" is defined to include:

> A hit-and-run motor vehicle which causes bodily injury to an insured person as the result of a motor vehicle accident.  The identity of either the operator or owner must be unknown.  **The accident must be reported to the police** or proper governmental authority as soon as practicable.  [Allstate] must be notified within 30 days. (emphasis added).

1

The focus of Allstate's Motion is whether Smart did in fact report the accident to the police as required by the policy, and the evidence on this point is conflicting. In a July 28, 2021 letter to Smart's counsel, Allstate employee Kevin Broadhead asked her to "[p]lease confirm if the police were ever contacted regarding this hit and run accident, and provide me with a copy of the police report." Smart's counsel responded the same day that "there is no police report in this case." Broadhead sent a letter on August 2, 2021 again asking, "[a]s this was a hit and run accident, were the police ever contacted?" Smart's counsel clarified that they were not: "please be advised that the police were not called as the vehicle in which our client was a passenger was sideswiped and the car never stopped."

Allstate attempted to formalize these responses in a Request for Admission that "Plaintiff did not report the subject motor vehicle accident to the police or any other law enforcement/governmental agency." On February 28, 2022, Smart denied the Request for Admission stating: "Accident was reported immediately to Allstate on the date of the accident or shortly thereafter via telephone. This was obviously done so that the car could be repaired as well." On April 11, 2022, Smart provided an updated response, now expressly stating that he did report the accident to the police: "Denied. The accident was immediately reported to the police by telephone but they would not arrive on scene because no EMS was requested at that time."

In a deposition taken on April 19, 2022, Smart again stated that he reported the accident to the police in the immediate aftermath: "We pulled over, called the cops. Nobody ever came. And then we sat there for a little longer, nobody ever came, and then we proceeded after a while." When asked for his cell phone number so that Allstate could corroborate his testimony, Smart said he could not recall the carrier or the full number, beyond a 267 area code.[1] On May

---

[1] By way of explanation, Smart said he "typically change[s his] number every six months." He "use[s] different providers" because he "just get[s] different phones." He is "not a social person" and does not "like people

2

23, 2022, Smart's counsel provided Allstate with the number (267) 240-1459 and the carrier Tracfone.

On May 31, 2022, Allstate subpoenaed Tracfone for records of calls or text messages made or received by that number between August 16 and August 18, 2019. Tracfone responded to the subpoena on August 2, after nine follow-up requests by Allstate and two motions—one to enforce the subpoena and one for contempt and sanctions, with a no-records certification. In the statement, Tracfone's custodian of records attested that: "After conducting a diligent and thorough search and inquiry, Tracfone is unable to locate any records pertaining to Target Number 267.240.1459. I therefore confirm that Tracfone has no records pertaining to Target Number 267.240.1459 within its custody or control." Tracfone attached two pages of records that state: "NUMBER NOT ASSIGNED TO TRACFONE. NO RECORDS FOUND."

After receiving the no-records certification, Allstate followed up with Smart's counsel on August 9, seeking confirmation that the number and carrier were correct. Smart's counsel responded that Tracfone was the correct carrier and that the number previously provided "is the number that the client recalls." Smart does not claim that he otherwise reported the accident to any government or law enforcement agency.

## II.   LEGAL STANDARD

To prevail at summary judgment, "the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Nat'l State Bank v. Fed. Rsrv. Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)). A factual dispute is material where it "might affect the

---

contacting [him]," so he "change[s] the number and . . . give[s] it to who [he feels] as though should have [his] phone number."

outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And "[a] genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). The movant bears the initial burden of identifying those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324

Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations and alterations omitted). 'The court may not . . . weigh the evidence or make credibility determinations because these tasks are left for the fact finder." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011) (internal quotations omitted).

### III. DISCUSSION

Allstate argues that Plaintiff cannot meet the second element of a breach of contract claim—that Allstate breached a duty imposed by a contract, in this case the Policy. *Williams v.*

*Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000).[2]  As the Allstate policy limits uninsured motorist coverage for hit-and-run accidents to accidents reported to the police (or other proper governmental authority), under Rule 56 Smart must produce evidence that he reported the accident to the police to overcome Allstate's Motion.[3]  *See Celotex*, 477 U.S. at 322-23.

Smart alleges in his Amended Complaint that he "fully complied with all of the terms, conditions, and duties required under the Allstate policy," and his deposition testimony that he called the police supports this contention.  His counsel's prior statements and the Tracfone no-records certification support Allstate's contention that he did not.  Although conflicting evidence would typically preclude summary judgment, Allstate argues that Smart cannot rely on his testimony alone to create a genuine issue of material fact.  In support, Allstate cites a non-precedential Third Circuit opinion, *Solomon v. Society of Automotive Engineers*, 41 F. App'x 585 (3d Cir. 2002), and district court opinions that cite *Solomon* or contain similar analysis.  *See* 41 F. App'x at 586 (affirming grant of summary judgment because "the only evidence in support of [plaintiff's] claims was [his] own testimony"); *Weiss v. Pa. Hosp. of the Univ. of Pa.*, 2021 WL 780307, at *5 (E.D. Pa. Feb. 26, 2021) (citing *Solomon*); *Fusco v. Bucks Cnty.*, 2009 WL

---

[2] The policy states that, subject to exceptions inapplicable to Smart's case, "any and all claims or disputes in any way related to this policy shall be governed by the laws of Pennsylvania."

[3] In his Opposition to Allstate's Motion, Smart emphasizes that he "immediately reported the accident" to Allstate, and Allstate therefore "cannot claim that it had no knowledge/notice of this accident[.]"  This argument, as Allstate notes, is irrelevant for two reasons.  First, the policy's terms unambiguously require notification to both Allstate <u>and</u> the police or a governmental authority.  Second, uninsured motor vehicle insurance coverage is also limited pursuant to Section 1702 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. § 1702 to accidents "reported to the police or proper governmental authority" and this statutory requirement governs regardless of a specific policy's language.  *State Farm Mut. Auto Ins. Co. v. Foster*, 889 A.2d 78, 82 (Pa. 2005).  The purpose of this requirement is the promotion of affordable automobile insurance by "minimizing fraudulent claims," *id.* at 81, not ensuring notice to the insurer.

4911938, at *11 (E.D. Pa. Dec. 18, 2009) (citing *Solomon*); *Markham v. Reish*, 2010 WL 2632728, at *5 (M.D. Pa. June 28, 2010).  However, *Solomon* relies on *Celotex*, which held that "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. . . . " *Celotex*, 477 U.S. at 324.  Rule 56(c) expressly includes, and *Celotex* specifically endorses, "depositions, answers to interrogatories, and admissions on file" as competent evidence to oppose a motion for summary judgment.  *Id.*  This is precisely the evidence that Smart cites.  Allstate's argument is, accordingly, not supported by precedent and the text of Rule 56, and Smart has made the sufficient showing of a genuine dispute of material fact necessary to overcome summary judgment.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 541 n.5 (3d Cir. 2017) (reversing grant of summary judgment even though plaintiff's only evidence was his own testimony because "when deciding a motion for summary judgment, 'the evidence of the non-movant is to be believed'").

     Separate from its reliance on *Solomon*, Allstate appears to argue that the Tracfone statement does not merely conflict with Smart's testimony, it so "negates his contention that he reported the accident to the police" that summary judgment is required.  In *Scott v. Harris*, the United States Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  550 U.S. at 380.  This holding has been characterized as a "limited exception" to the typical summary judgment analysis, *Patterson v. City of Wildwood*, 354 F. App'x 695, 697 (3d Cir. 2009), and has rarely been cited by the Third Circuit outside of its legal and factual context—an excessive force claim involving video evidence contradicting the plaintiff's account.

However, it has been cited as a more broadly applicable modification of the summary judgment analysis. *See Berrada v. Cohen*, 792 F. App'x 158, 161 (3d Cir. 2019) (affirming grant of summary judgment in an employment dispute where plaintiff "offer[ed] no corroboration for his testimony" and "his testimony is contradicted by indisputable evidence").[4]

Even if *Scott v. Harris* (or a similar principle) were applicable here, the no-records certification does not undermine Smart's testimony as to require summary judgment. Allstate and Smart offer two competing interpretations of the Tracfone certification. Allstate argues it means Tracfone never had any records of the number, and that the certification so undermines Smart's deposition testimony that summary judgment is warranted. Smart argues the certification means Tracfone no longer has records of the number provided, and therefore his deposition testimony is simply uncorroborated.

Allstate's subpoena, issued in 2022, requested call records from nearly three years prior. Given that cell phone carriers differ in their records retention policies, and giving Smart the benefit of justifiable inferences in his favor to which he is entitled at this stage, his interpretation is not unreasonable. *See* Sean D.G. Camacho, *Can You Hear Me Now? Time to Consider Whether Cell Phone Providers Are State Actors*, 49 Suffolk Univ. L. Rev. 257, 278 n.184 (2016) (noting that, according to information disclosed in 2010, major carriers retain call records from varying periods of "eighteen months up to seven years"). Tracfone's statement that it did not

---

[4] The Second and Seventh Circuits have also "recognized a narrow exception to the general rule that sworn testimony is sufficient to establish a genuine issue of material fact," and allow summary judgment "[i]f a plaintiff solely relies on his own testimony, uncorroborated by any other direct evidence, which is 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the plaintiff's allegations. . . .'" *Nunez v. Heere*, 438 F. Supp.3d 321, 324 (E.D. Pa. 2020) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997)). However, district courts in the Second Circuit frequently avoid invoking *Jeffreys*, *id.* at 325 n.4, and it has only been cited by the Third Circuit once, in a non-precedential opinion, where the plaintiff offered "divergent and conflicting narratives—accounts that changed substantially every time he was asked to describe what transpired. . . ." *Damiani v. Duffy*, 754 F. App'x 142, 147 (3d Cir. 2018).

have records pertaining to the number provided by Smart "within its custody or control" may mean that it no longer retained records from 2019 in 2022, not that the number never existed.

Allstate has raised significant credibility issues with respect to Smart's testimony, but their consideration "must be left to the jury." *Pearson*, 850 F.3d at 541 n.5.  An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**